Call the first case. Case number 093187, People v. Paul Gray. Please step up and identify yourselves. Good morning, Your Honor. It's Mike Hornstein, the State Appeal Defender, representing Paul Gray. Good morning, Your Honor. It's Kalia Coleman on behalf of People v. Gray. All right. Well, you know, basically our procedures, we're somewhat liberal in the sense that if we ask a lot of questions, we'll give you some leeway. Okay. All right. Thank you, Your Honors. And I'd like to ask for a couple minutes for rebuttal, and I intend to focus, unless this Court obviously has questions on the issue, on the attempt murder issue. Your Honors, the State had to prove that my client wanted the motorcyclist, in this case, dead, and it just didn't come close. It had no confession. It had no witnesses to the actual collision. So it had no witnesses to say what my client actually did. Was he accelerating? Was he braking? Was he skidding? Was he approaching in a straight line? Or did he come right out of the opposing lane of traffic? We just don't know. We do know three things. We know that he struck the motorcyclist, and the motorcyclist was badly hurt. We know that he was driving recklessly before that and driving around like a maniac, basically. And we know that there's no evidence that when he was told the motorcyclist was under his car, that he attempted to move the car or accelerate. Instead, he got out and tried to steal another car. None of that is enough to prove that he wanted the motorcyclist dead. And it suggests that what he was doing was what he had been doing, basically, the whole time since the first witness saw him, which was driving recklessly. Now, if the motorcyclist had died, the State wouldn't have had a problem. It could have proved murder. It would have been felony murder because he was fleeing the hijacking. It might have been murder under 725.182, which involves knowing X that created a strong probability of death to someone. But for attempt murder, a strong probability is not enough. If we look at the evidence in the light and most favorable to the prosecution, is it fair to say that the finder fact that inferred that there was an attempt to murder by the fact that there's no aid rendered? No, because inferences, even when you go with the light and most favorable to the State, the inferences have to be reasonable. Credibility findings can be rational, but inferences have to be reasonable as far as the case is concerned. And it is not a reasonable inference to say that he wanted the person dead, because there's just no evidence that he did. There's no evidence that he... If you look at the cases where there was a collision and there was an attempt to kill, it was someone, you know, looked somewhere at someone, or there was a threat, or there was a bar fight before, and he turned around and went back into the bar fight. This case is nothing like that. There's no evidence from which you can say what he wanted to do. Because there's no evidence of what his actions were. There's only evidence of the results. And so I guess what I was saying, attempt murder is different. It requires specific intent to murder, and we don't feel there's any evidence that he did. And what he was doing was reckless, and he was no business driving, and he committed a crime, but it was an attempt murder. And so obviously I have a fairly short speech here, so unless there's any other questions, we'd ask that it be reduced to something more appropriate than attempt murder. Thank you. Thank you. May it please the Court, Counsel. Once again, my name is Kalia Coleman on behalf of the people of the State of Illinois. Your Honors, the evidence in this case, viewed in a light most favorable to the prosecution, was sufficient to prove that the defendant did have the specific intent to kill the motorcyclist when he struck him. The facts in this case cannot be considered in isolation. Whether the facts in this case have to be considered as a series, a chain of events, and each link in that chain of events considered in its totality is what established specific intent to kill. Defendant's behavior from the time he struck the bicyclist to the time that he struck the motorcyclist escalated. It became more malicious, more intentional, more indicative of a specific intent to kill. Ms. Coleman, what was his whole purpose in getting in the truck in the first place? Your Honor, based on the record, there's no particular explanation as to that. I agree with you on that. And so we have this clearly criminal series of acts without any known purpose, known intent. And so at some point it's clear from this record that his intent was to avoid apprehension, certainly at least at the time when the bystanders come up to him with the motorcyclist under the automobile and he flees. But at any other time, there really isn't anything in the record, is there, as to why this whole thing started and what he was thinking at any given time other than, I want to continue to get away. Yes, Your Honor, but based on, at issue here is whether he has specific intent to kill the motorcyclist. I know, which is why I asked the question. So we have to consider his acts that occurred right before then. We know that he had struck two bicyclists, and he was trying to get away from that crime, and then he hijacked the vehicle. And then he struck the motorcyclist. We don't even know whether he saw the motorcyclist before he struck him, do we? No, Your Honor, but based on the testimony of Myra Stanley, which was in the record, one could infer that defendant's actions were intentional based on Myra Stanley's testimony. She testified that as she was coming out of her home, walking her family members to a car in a nearby parking lot, she hears a sound, what appears to be a loud, loud echoing sound, metal and like a muffler being dragged. And she used the word dragged. She walks over into the direction of that sound, at which point she sees the motorcyclist underneath the front of the defendant's vehicle. A dragging sound indicates movement forward, not an indication to brake, not an indication that defendant tried to stop. But we don't even understand how long that period of dragging was and whether he was braking during that period of time. There's no evidence of that either, is there, Ms. Coleman? That's correct, Your Honor. The record is silent as to that, but here the question is, based on the testimony that was adduced at trial, whether one could reasonably infer that his actions were intentional. And because this deals with a state of mind where you don't have direct evidence, there's only circumstantial evidence. It's the people's position that based on the testimony of Myra Stanley, one could infer, based on the positioning, that the motorcyclist's body was underneath the front of the defendant's vehicle, not to the side. It was lodged underneath the front so far that it had to be lifted off of his body by passerbys and men who were on the street. We have this anomaly in the law that you have, as counsel conceded, and properly so in his argument, that if, and fortunately it wasn't the case, that the motorcyclist was killed, there would be no question under these facts that there would be enough to prove a murder. But where the person survives and you need the specific intent, it becomes a more difficult case to prove. Especially, and we all know about circumstantial evidence being generally relied upon in most cases to show intent. What other than the fact that there was some point after impact with the motorcyclist when a witness heard a scraping or dragging sound for an undefined period of time and the fact that the person fled instead of rendering aid, what other things can you point to that would be possible to consider for the purposes of establishing intent? Well, Your Honor, first, under the law, where a defendant commits an act, where the direct and natural consequence or probability of that act is to result in death upon a person, then specific intent can be presumed. But here we don't even know if he saw this motorcyclist beforehand. And so the only act that you know is going on is he's fleeing from someplace else and he collided with a motorcyclist and that there was some period of time after impact before his automobile stopped and he fled. That's basically it, isn't it? Those are the facts that came out during trial. But I think that the people hold the position that it's important to consider defendants' conduct right before he struck the motorcyclist. He hijacks the vehicle where he pulls the woman out of the car in the middle of an intersection, drops her in the middle of the street while her two minor passengers, which was her child and her niece, barely escape and he heads down the street. Didn't try to kill them, right? Well, that's up for debate, Your Honor. He dropped a person in the middle of an intersection. You didn't even charge him with trying to kill them. That was to the discretion of the state whether or not they were going to choose. But the facts in that case, just his behavior with regards to hijacking the vehicle, indicated a different mens rea than the bicyclist. And obviously at that point What's the difference between the bicyclist and the motorcyclist? They're the same facts. There are distinctions, Your Honor. Don't you think maybe the judge overdid it here? It's maybe a little abusive discretion? He lets one go and the other one he doesn't? Your Honor, if you consider the trial court's finding, the language used by the trial court, the trial judge clearly made an assessment in distinguishing defendant's behavior with regards to the bicyclist versus his behavior with regards to the motorcyclist. What's the specific differences? The specific difference is with regards to the bicyclist, defendant struck them with his side view mirror. And that wasn't a head-on collision. Here with the motorcyclist. Yeah, but we know he saw the bicyclist. And we could presume that he saw the motorcyclist as well. But that's what you just said, presume. Now there's a distinction. So I feel that there's more validity to charge him with the specific intent as to the bicyclist than I do the motorcyclist. Your Honor, at the point that he struck the bicyclist versus the time he struck the motorcyclist, the motive was different. At the time when he struck the bicyclist, he wasn't, we don't know exactly what had happened before, but we do know by the time he struck the motorcyclist, he had committed two earlier crimes. People had witnessed these crimes and he was trying to get away. And motive is relevant in determining specific intent, especially when you have circumstantial evidence. The point is, defendant was trying to get away. And by any means necessary, he was going to get away, even if that meant he had to kill. The motorcyclist was in his way and he ran him over. Based on the evidence, it was sufficient to establish that he had the specific intent to kill, based on the testimony of Myra Stanley and also considering the totality of the circumstances, that he was trying to escape the crime and by any means necessary, he was going to do so. Also, the people would like to point to or address something that defense counsel raised regarding other car collision cases. One of those cases defendants cited to was the case of People v. Smith. And the facts of that case are analogous to the case at Barr. In People v. Smith, the police officers had conducted an investigation of the defendant. In People v. Smith, we have evidence that the defendant actually made eye contact with the officer before he accelerated with the car, so he knew the officer was in front of the car. We don't have that different than the case that we have here? That is different, Your Honor. But based on the fact that the motorcyclist, once again, was underneath the front of defendant's vehicle, that indicates that no intention was made to try to avoid contact or impact with that motorcyclist at all. How do you get that from those facts? I know you have a difficult case to argue, Ms. Coleman, but I don't understand how you can argue that the fact that he is under the car, under the front of the car, shows an intent. You could hit any part of the motorcycle. If you don't know, if you don't ever see the motorcyclist, and we don't know on these facts that he ever saw him, how do you get from the fact that we don't know if he even saw him to that he intended to kill him? How can you intend to kill someone that you don't know exists? He has no proof here in this record that he ever saw the motorcyclist before impact. Your Honor, defendant's actions after the fact indicated that he saw the motorcyclist or he knew that he had struck him. And a defendant's actions after the fact can be used to help to either negate specific intent or prove specific intent. And here, defendant didn't attempt to render any aid. He didn't say, I got you. He didn't try to roll over him again. He didn't try to hit him or strike him in any way. All he did was flee. Your Honor, the facts also indicate, based on the testimony of Myer Stanley, that at that point there was deadlock traffic in both directions. So there was no way a defendant could have gone. Had traffic been clear, he probably would have continued to drive, which is why he got out of the car and tried to hijack other vehicles to get away. But that in no way belies or contradicts or proves in any way that he didn't intend to run over the motorcyclist when he struck him. And once again, based on all the evidence that was deduced at trial and viewed in a light most favorable to the prosecution, it is our position that the evidence in this case was sufficient to prove that defendant had the specific intent to kill the motorcyclist when he struck him. Once again, the people would just like to say to the Court that this Court must consider the totality of the circumstances and the fact that defendant's conduct continued to escalate. He was trying to get away by any means necessary. He was going to get away, and even if that meant he had to kill, that is what he was going to do. And under the law, that was... And he found no other way to avoid capture that under those circumstances he might have had the intent to kill. But where there's no antecedent fact that shows that he ever saw him in advance, it's less of a factual basis for your position. Your Honor, definitely if there was eyewitness testimony that said that he saw him, certainly that would make this case a clear winner. However, based on the testimony of Myra Stanley, the sounds that she heard, once again, a dragging sound does not indicate someone braking. A dragging sound indicates someone propelling forward, which indicates that that vehicle was continuing to move forward. And if someone is underneath your vehicle after you struck them and you're moving forward, you would hear a sound and you would try to... But isn't it the case that in any, for example, negligence case where no criminal charge is to be filed, there's incidences of people being dragged underneath even when there's no intent to hurt anybody. Isn't that true? Yeah. You know, if a motorcycle is hit, he's going to be underneath the car in many cases, and that does not necessarily tell us what happened prior to the hit. But the fact that someone is underneath the car and you continue to drive indicates... Well, how far did they drive in this case? The record is silent to that issue. There's no indication that he had his foot on the accelerator after impact. That's true, Your Honor, but there is an indication that he left the engine running when he got out of the vehicle. He made no attempt to take reasonable care to ensure that the man wouldn't die. He continued to leave the engine running, which means that the car could have continued to propel forward. Does the record state what gear the car was in when the engine was left running? Was it in park? Was it in drive or reverse? Your Honor, the record is also silent to that fact as well. Anything else? No, Your Honor. Once again, based on the evidence that was deduced at trial, it is the people's position that that was sufficient, viewed in a light most favorable to the prosecution, that that evidence was sufficient to prove that the defendant had specific intent to kill, and so the people ask that you affirm defendant's conviction and sentence for attempt murder. Thank you. Thank you, Ms. Coleman. No further questions, Your Honor. Thank you. Well, we'll take it under advisement. This is the shortest one we've had.